IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

- - - -

| | |
|---|---|
| BRIAN D. PIERCE, )<br>)<br>Plaintiff, )<br>)<br>-vs- )<br>)<br>PENNSYLVANIA DEPARTMENT )<br>OF CORRECTIONS, )<br>)<br>Defendant. ) | Civil Action<br>No. 03-173E |

- - - -

DEPOSITION OF:  NANCY GIROUX

- - - -

DATE:         January 20, 2005
              Thursday, 1:05 p.m.

LOCATION:     Law Offices of Neal Sanders
              1924 North Main Street Ext.
              Butler, PA 16001
              724-282-7771

TAKEN BY:     Plaintiff

REPORTED BY:  Toni Rennebeck, RPR
              Notary Public
              NMR Reference No. 30738



ORIGINAL

PLAINTIFF'S EXHIBIT 4

ORTERS
Gibsonia, PA          724-444-4433

1  Q.  Okay. Now, other than Brian Pierce, can you
2      think of any other male RN or LPN that was
3      terminated under your watch at Cambridge?
4  A.  I believe that Brian Pierce is the only one
5      that's been terminated.
6  Q.  Okay. At Cambridge Springs.
7  A.  Yes. I'm sorry.
8  Q.  I imagine you've heard the name Michael White,
9      Dominic White's cousin, who was terminated at
10     Albion?
11 A.  Yes.
12 Q.  It went to jury trial in Erie in the year 2002?
13 A.  Yes.
14 Q.  How did you come to know about Michael White or
15     his case?
16 A.  Through Brian Pierce.
17 Q.  Is it possible that you also had a discussion
18     from time to time, or at least one time, with
19     Maxine Overton about the Michael White case?
20 A.  I don't recall any conversations with Maxine
21     Overton about that case in particular.
22         I believe that most of my information
23     that I did have, which was minimal, came from
24     Brian Pierce.
25 Q.  Okay. Now, a name has come up in this case by

```
 1        correct?
 2   A.   Correct.
 3   Q.   Is this the first time, March of '02, a month
 4        before this memo, that you actually were
 5        officially the health care administrator as
 6        opposed to the acting?
 7   A.   I believe so.
 8   Q.   Okay.  And where is this going, Nancy?  Is this
 9        going to Nancy at another -- Nancy Wirth at SCI
10        Cambridge Springs, or is this going to Nancy
11        Wirth at Camp Hill?  In other words, where's
12        Nancy's office?  Sorry.
13   A.   Nancy Wirth was our personnel director at SCI
14        Cambridge Springs.
15   Q.   Who was the human resource director in June of
16        2000, two years earlier prior to this memo?
17   A.   I'm not sure.
18   Q.   Can you remember who, at least, the predecessor
19        to Nancy Wirth was then if I don't take you back
20        to June of 2000?
21   A.   Roger Sear.
22   Q.   And it's your understanding that there's a
23        separate human resource office where Henry
24        Powell worked at SCI Albion?
25   A.   Yes.
```

1  Q.   Okay.  And if you look at this document, it
2       makes reference to McGuire and Pietrzak as well
3       as to Pierce; is that correct?  Looking at Page
4       1.

5                           - - - -

6            (The witness reviewed the document.)

7                           - - - -

8  A.   It also makes reference to Cheryl Heffern and
9       Tom Zuber and S. Cooper.

10 BY MR. SANDERS:

11 Q.   Okay.  But does it make mention of Yvonne
12      McGuire and Ms. Pietrzak?

13 A.   Yes.

14 Q.   And you authored this document?

15                          - - - -

16           (The witness reviewed the document.)

17                          - - - -

18 A.   Yes.

19 BY MR. SANDERS:

20 Q.   You knew already by April 12 of 2002 about the
21      Michael White case from Brian Pierce or whatever
22      other source you heard it from, did you not?
23              MR. EDDY:  I have to object to the
24      form of the question.  It was leading.  Could
25      you ask her a question?

```
 1  BY MR. SANDERS:
 2  Q.   Do you understand the question?
 3            By this date, April 12 of 2002, which
 4       would be approximately five months before
 5       Michael White's jury trial in Erie which took
 6       place on October of '02, had you already heard
 7       about the Michael White case from Brian Pierce?
 8  A.   Some details.
 9  Q.   What do you remember Mr. Pierce telling you?
10  A.   He felt that Mr. White had been fired
11       inappropriately.
12  Q.   Did those conversations between the two of you
13       take place at work?
14  A.   Probably, yeah.  That's the only place I knew
15       him from.
16  Q.   Do you recall the circumstances under which it
17       came up?  The subject of Michael White?
18  A.   No.
19  Q.   Do you remember if anybody else was present when
20       you and Mr. Pierce discussed the Michael White
21       situation?
22  A.   I don't remember the circumstances when we
23       discussed it.
24                        - - - -
25            (Deposition Exhibit No. 6 marked for
```

```
 1         identification.)

 2                    - - - -

 3         (The witness reviewed the document.)

 4                    - - - -

 5  BY MR. SANDERS:

 6  Q.   I've given you what we've marked as Exhibit 6

 7       and given Mr. Eddy a copy as well.

 8            This appears to be a memo from Pierce

 9       to Deputy Good, October 25 of '01, with a copy

10       to you; correct?

11  A.   Correct.

12  Q.   Do you want to take a moment to read this?

13                    - - - -

14         (The witness reviewed the document.)

15                    - - - -

16  BY MR. SANDERS:

17  Q.   Do you have that document in front of you?

18  A.   Yes, I do.

19  Q.   Have you had an opportunity here to read and

20       review it again?

21  A.   Yes, I did.

22  Q.   Do you recall this document, or the subject of

23       it?

24  A.   To be honest, barely.

25  Q.   Does it mention another co-worker of his in this
```

| | | |
|---|---|---|
| 1 | | interviewed him. |
| 2 | Q. | Do you know whether or not he testified at the |
| 3 | | Michael White trial or not? |
| 4 | A. | No, I do not. |
| 5 | Q. | You know that Brian Pierce did. |
| 6 | A. | I believe that Mr. Pierce had told me he was |
| 7 | | going to, yes. |
| 8 | Q. | Did you ever see my client after May of '02 for |
| 9 | | him to say that to you? |
| 10 | A. | Mr. Pierce? |
| 11 | Q. | Yes.  Let me say it again. |
| 12 | | Brian was terminated in May of '02. |
| 13 | | He testified in Erie in Federal Court in October |
| 14 | | of '02. |
| 15 | | I'm just going back to your answer |
| 16 | | just to my previous question is what I'm asking |
| 17 | | you. |
| 18 | | You indicated that Brian indicated to |
| 19 | | you that he was going to be testifying at the |
| 20 | | Michael White case, or trial, which, in fact, he |
| 21 | | did. |
| 22 | | My question to you is would you not |
| 23 | | have heard that while he was still employed for |
| 24 | | you at SCI Cambridge Springs?  Or did you run |
| 25 | | into Brian after he was terminated to where he |

```
 1        refers to, and ask you if you have in front of
 2        you Exhibit 11 dated approximately three weeks
 3        after the human resource office at SCI Cambridge
 4        Springs received Exhibit 10, the discrimination
 5        complaint that Mr. Pierce had filed with the
 6        Equal Employment Opportunity Commission.
 7                  Do you have that Exhibit 11 in front
 8        of you?
 9                          - - - -
10             (The witness reviewed the document.)
11                          - - - -
12   A.   Yes.
13   BY MR. SANDERS:
14   Q.   And this is a three-page document I gave you; is
15        that correct?
16                          - - - -
17             (The witness reviewed the document.)
18                          - - - -
19   A.   Yes.
20   BY MR. SANDERS:
21   Q.   And this is a document signed by Brooks?
22        Marilyn Brooks?
23   A.   Yes.
24   Q.   Do you recognize her signature?
25   A.   Yes.
```

1  Q.  Did Marilyn Brooks ever speak to you between the
2      time that 10 was, if you recall, between the
3      time that 10 was received by your HR office at
4      Cambridge Springs, the complaint, and the time
5      that she issued this letter of no cause to
6      Mr. Pierce on November 15 of 2001?
7          Did she ever talk to you about
8      Exhibit 10 before she issued Exhibit 11?
9  A.  Honestly the only thing that I recall is the
10     fact that I was aware that he had filed a
11     discrimination suit.  I don't believe that
12     anyone has asked me what my opinion was, what my
13     reaction was to it when he did it.
14         There was an investigation regarding
15     that discrimination suit, and I was informed
16     after the fact that there had been found no
17     basis for it.
18 Q.  Let me help you with some language so that we
19     get it straight; okay?
20 A.  All right.
21 Q.  Document No. 10 is not a suit.  A suit is what
22     brought Mr. Eddy into the case.  A suit is the
23     word that Mr. Eddy and I use to describe where
24     we are now up in Erie Federal Court; okay?
25 A.  Thank you.

| | | |
|---|---|---|
| 1 | Q. | No, no.  Are you then telling us under oath |
| 2 | | today that you were made aware before Brian was |
| 3 | | terminated in '02 May about Exhibit 10, the |
| 4 | | charge of discrimination, that he had filed it? |
| 5 | A. | Yes, I believe I was. |
| 6 | Q. | Okay.  That's what I'm asking, because you said |
| 7 | | suit and that means something different to |
| 8 | | Mr. Eddy and myself. |
| 9 | A. | Yeah. |
| 10 | Q. | All right.  Now, as you sit here today, do you |
| 11 | | recall who told you about Exhibit 10, the charge |
| 12 | | of discrimination, being filed by Mr. Pierce in |
| 13 | | October of '01? |
| 14 | A. | I don't recall, but I believe it probably would |
| 15 | | have been Dominic White.  Either that or the |
| 16 | | personnel director. |
| 17 | Q. | Who would that have been?  Nancy Wirth? |
| 18 | A. | Yeah, Nancy Wirth.  At that time they don't give |
| 19 | | you any details but they inform you that it has |
| 20 | | been filled. |
| 21 | Q. | Okay.  And just to follow up on that, are you |
| 22 | | also telling us under oath today that as you sit |
| 23 | | here today, that's all that you were asked or |
| 24 | | told about Exhibit 10?  That you were not, in |
| 25 | | fact, interviewed by Dominic White or by Nancy |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL WHITE, | : | JURY TRIAL DEMANDED |
| Plaintiff, | : | Civil Action No. 00-377 Erie |
| vs. | : | Hon. Sean J. McLaughlin |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, AN AGENCY OF THE COMMONWEALTH OF PENNSYLVANIA, | : | PLAINTIFF'S RULE 26 INITIAL DISCLOSURES |
| Defendant. | : | FILED ON BEHALF OF: Plaintiff, Michael White |
| | : | COUNSEL OF RECORD FOR THIS PARTY: Neal A. Sanders, Esquire LAW OFFICES OF NEAL A. SANDERS 1924 North Main Street Extension Butler, Pennsylvania 16001 |
| | : | (724) 282-7771 PA ID No. 54618 |



EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL WHITE, | : | JURY TRIAL DEMANDED |
| Plaintiff, | : | Civil Action No. 00-377 Erie |
| vs. | : | Hon. Sean J. McLaughlin |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, AN AGENCY OF THE COMMONWEALTH OF PENNSYLVANIA, | : | |
| Defendant. | : | |

## PLAINTIFF'S RULES 26 INITIAL DISCLOSURES

AND NOW, comes Plaintiff, Michael White, by and through his counsel, Neal A. Sanders, Esquire, of the Law Offices of Neal A. Sanders and pursuant to Federal Rule of Civil Procedure 26(a)(1), makes the following initial disclosures to the Defendant, Pennsylvania Department of Corrections, an Agency of the Commonwealth of Pennsylvania. Plaintiff reserves the right to supplement of amend its responses herein based on additional information obtained through formal discovery or other means.

I. Rule 26(a)(1)(A) Disclosure.

Based on the information presently available, Michael White identifies the following individuals as persons likely to have discoverable information that plaintiff may use to support his claims or defenses.

    1.    Michael White
            23285 Wilkie Road
            Cambridge Springs, PA 16403

2. Nancy Felner, R.N.
   c/o Pennsylvania Department of Corrections,
   an Agency of the Commonwealth of Pennsylvania
   SCI Albion
   10745 Route 18
   Albion, PA 16475-0001

3. Brenda Hale, R.N.
   c/o Pennsylvania Department of Corrections,
   an Agency of the Commonwealth of Pennsylvania
   SCI Albion
   10745 Route 18
   Albion, PA 16475-0001

4. Brian Pierce, L.P.N.
   c/o Pennsylvania Department of Corrections,
   an Agency of the Commonwealth of Pennsylvania
   SCI Albion
   10745 Route 18
   Albion, PA 16475-0001

5. Donald Lucore, L.P.N.
   c/o Pennsylvania Department of Corrections,
   an Agency of the Commonwealth of Pennsylvania
   SCI Albion
   10745 Route 18
   Albion, PA 16475-0001

6. Jim McDuff, R.N.
   c/o Pennsylvania Department of Corrections,
   an Agency of the Commonwealth of Pennsylvania
   SCI Albion
   10745 Route 18
   Albion, PA 16475-0001

7. Cassey Oberlarder
   c/o Pennsylvania Department of Corrections,
   an Agency of the Commonwealth of Pennsylvania
   SCI Albion
   10745 Route 18
   Albion, PA 16475-0001

8. Judy Weyers
   c/o Pennsylvania Department of Corrections,
   an Agency of the Commonwealth of Pennsylvania
   SCI Albion
   10745 Route 18
   Albion, PA 16475-0001

9. Edward Brennan, Superintendent
   State Correctional Institution at Albion
   10745 Route 18
   Albion, PA 16475-0001

10. Henry Powell, Personnel Officer
    State Correctional Institution at Albion
    10745 Route 18
    Albion, PA 16475-0001

11. Maxine Overton, RN Supervisor
    State Correctional Institution at Albion
    10745 Route 18
    Albion, PA 16475-0001

12. Doug Randall, Former RN
    State Correctional Institution at Albion
    10745 Route 18
    Albion, PA 16475-0001

Plaintiff reserves the right to add to this list the names of different referred to by the Defendant.

II. Rule 26(a)(1)(B) Disclosure.

Plaintiff produces the attached documents which it may use to support its claims or defenses (See attached - Will be supplemented).

III. Rule 26(a)(1)(C) Disclosure.

Plaintiff is seeking damages for lost wages, benefits and compensatory damages for emotional distress / trauma associated with unlawful termination.

IV. Rule 26(a)(1)(D) Disclosure.

There are no known insurance issues in this case.

Respectfully submitted,

LAW OFFICES OF NEAL A. SANDERS

Dated: March 15, 2001          By: _____
                               Neal A. Sanders, Esquire
                               Counsel for Plaintiff

4

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 15th day of March, 2001, the original of the foregoing Plaintiff's Rule 26 Initial Disclosures, was mailed by the United States First Class Mail, postage prepaid, to the following:

        Thomas F. Halloran
Senior Deputy Attorney general
   Office of Attorney General
 Commonwealth of Pennsylvania
       564 Forbes Avenue
        Manor Complex
 Pittsburgh, Pennsylvania 15219

Dated: March 15, 2001        By: _____
                                      Neal A. Sanders, Esquire
                                      Counsel for Plaintiff,
                                      Michael White

                                      LAW OFFICES OF NEAL A. SANDERS
                                      1924 North Main Street Extension
                                      Butler, Pennsylvania 16001

                                      (724) 282-7771
                                      PA ID No. 54618

# COMMONWEALTH EMPLOYEE WITNESS STATEMENT

The following statement is being given by me freely, and without coercion for official Commonwealth business, and will be considered for all purposes, including actions under the Statutes of the Commonwealth, just as though it had been sworn or affirmed before a court of law or formal arbitration panel.

THE FOLLOWING IS A LIST OF NAMES OF THOSE I HAVE PERSONALLY WITNESSED BORROWING MEDICATIONS FROM OTHER INMATES:

C. HEFFERN LPN
T. Zuber RN
M. Kelly RN
S. PIETRZAK RN
G. JAMIESON LN
K. GARDNER RN
A. CHAPMAN RN
K. KING RN
E. ELDRED RN
Y. McGUIRE LPN

THIS STATEMENT HAS BEEN WRITTEN UNDER THE DIRECTION OF Dr. Bond.

____4-23-02____                      ____[signature]____
Date                                  Signature

_____                          _____
Date                                  Typist's Signature

**Note:** This form is to be completed and signed by an employee who is a witness to an incident involving employees of the Commonwealth. If the text is typed by someone other that the employee giving the statement, it must be read and signed by the employee. In the event the statement is typed, the party typing the statement must sign and date the document.



# COMMONWEALTH EMPLOYEE WITNESS STATEMENT

The following statement is being given by me freely, and without coercion for official Commonwealth business, and will be considered for all purposes, including actions under the Statutes of the Commonwealth, just as though it had been sworn of affirmed before a court of law or formal arbitration panel.

THE FOLLOWING IS A LIST OF NURSES THAT I HAVE PERSONALLY WITNESSED "PREPOURING" MEDICATIONS:

- C. HEFFERN LPN
  T. Zuber RN
  K. GARDNER RN

- ALSO NOTE THAT T. Zuber RN II AND M. Kelly RN II HAVE BRAGGED ON SEVERAL OCCASIONS IN FRONT OF MEDICAL AND SECURITY STAFF ABOUT THE TIME THEY PREPOURED THE ENTIRE 4th MEDICATION LINE ON A SUPER BOWL SUNDAY, TOLD THE SHIFT COMMANDER ABOUT IT AND WHAT THEY WERE PLANNING, AND COMPLETED THE ENTIRE 4th MEDICATION LINE DURING HALF-TIME SO EVERYBODY COULD GO BACK TO WATCHING THE SUPER BOWL, AND NEVER WERE DISCIPLINED FOR IT.

THIS STATEMENT HAS BEEN WRITTEN UNDER THE DIRECT ORDER OF DEP. Ford.

___4-23-02___          ___BRe____
Date                    Signature

_____            _____
Date                    Typist's Signature

**Note:** This form is to be completed and signed by an employee who is a witness to an incident involving employees of the Commonwealth. If the text is typed by someone other that the employee giving the statement, it must be read and signed by the employee. In the event the statement is typed, the party typing the statement must sign and date the document.



# COMMONWEALTH EMPLOYEE WITNESS STATEMENT

The following statement is being given by me freely, and without coercion for official Commonwealth business, and will be considered for all purposes, including actions under the Statutes of the Commonwealth, just as though it had been sworn of affirmed before a court of law or formal arbitration panel.

THE FOLLOWING IS A LIST OF NAMES OF THOSE I HAVE PERSONALLY WITNESSED GIVING INMATES MEDICATION OUT OF STOCK WITHOUT SIGNING IT OUT:

C. HEFFERN LPN
T. Zuber RN
M. Kelly RN
S. PIETRZAK RN
K. GARDNER RN
E. Eldred RN

THIS STATEMENT HAS BEEN WRITTEN UNDER THE DIRECT ORDER OF DEP. [illegible].

| 4-23-02 | [signature] |
|---|---|
| Date | Signature |

| | |
|---|---|
| Date | Typist's Signature |

Note: This form is to be completed and signed by an employee who is a witness to an incident involving employees of the Commonwealth. If the text is typed by someone other that the employee giving the statement, it must be read and signed by the employee. In the event the statement is typed, the party typing the statement must sign and date the document.



# COMMONWEALTH EMPLOYEE WITNESS STATEMENT

The following statement is being given by me freely, and without coercion for official Commonwealth business, and will be considered for all purposes, including actions under the Statutes of the Commonwealth, just as though it had been sworn of affirmed before a court of law or formal arbitration panel.

On 5-4-02 and 5-5-02 C. Heffern LPN and I had conversation regarding the practices of the nurses during medication lines. C. Heffe[rn] stated to me that she has witnessed other nurses borrowing meds from other inmates, not crushing or opening all meds per policy, and not signing out stock meds from the stock book. She also made a comment to me about how she had to send back medications to the pharmacy that were not supposed to be ordered, but were by other nurses — which has cost the Vendor (PHS) money. C. Hef[fern] SAID TO ME THAT SHE HAS SEEN THESE PRACTICES OCCURING IN THE PAST WEEK SINCE SHE HAS BEEN BACK FROM VACATION.

5-7-02           [signature]
Date                Signature

_____          _____
Date             Typist's Signature

**Note:** This form is to be completed and signed by an employee who is a witness to an incident involving employees of the Commonwealth. If the text is typed by someone other that the employee giving the statement, it must be read and signed by the employee. In the event the statement is typed, the party typing the statement must sign and date the document.

Page 1 of 1

PLAINTIFF'S EXHIBIT 16