IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN PIERCE, :
:
          Plaintiff, :
:
      v. : Civil Action No. 03-173E
: Judge Sean J. McLaughlin
PENNSYLVANIA DEPARTMENT OF : Magistrate Judge Susan Paradise Baxter
CORRECTIONS, :
:
          Defendant. :

## TABLE OF CONTENTS FOR ATTACHMENTS

                                                                                                                                                        **PAGE**

Appendix A ................................................................................................................................ 1

Appendix B ................................................................................................................................ 4

Appendix C ................................................................................................................................ 9

Appendix D .............................................................................................................................. 52

Appendix E .............................................................................................................................. 64

# ATTACHMENT A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Pittsburgh Area Office**

Liberty Center
1001 Liberty Avenue, Suite 300
Pittsburgh, PA 15222-4187
(412) 644-3444
TTY (412) 644-2720
FAX (412) 644-2664

Mr. Brian D. Pierce
313 South Main Street
Cambridge Springs, PA 16403

Our Reference:    172A300147
                  Pierce v. PA Department of Corrections/SCI Cambridge Springs

Dear Mr. Pierce:

Your charge of discrimination referenced above was investigated pursuant to the Commission's policies and procedures in which it was determined the allegations were not substantiated as indicated below:

1.  Allegations:

    You alleged that you were discriminated against because of your sex, male, your religious beliefs, and in retaliation for engaging in a protected activity, in that you were subjected to harassment and discharged from your position as an LPN on May 13, 2002.

2.  Respondent defense:

    The Respondent denied your allegations of discrimination and stated you were discharged solely because of your repeated refusals to adhere to Department of Corrections policies.

3.  Examination of the evidence:

    Your attorney received a copy of the response submitted by the Respondent and a written rebuttal was requested regarding the Respondent's defense. The rebuttal received does not provide any evidence and/or any other information that substantiate your allegations. You received several written disciplinary actions, and you were suspended, as indicated by documentation received from the Respondent, for not following the policies and procedures. You were warned that if you failed to follow those policies and procedures, you could be terminated. There is no evidence that the Respondent disciplined and/or discharged you because of your sex and/or religious beliefs. Furthermore, there is no evidence that you were retaliated against because you were a witness for an individual who filed a charge with this Commission.

2

4. Conclusion:

Your allegations of discrimination and/or retaliation cannot be substantiated. You were discharged solely for violating the Respondent's policies and procedures, and not because of your sex, religious beliefs and/or for engaging in a protected activity. None was discovered, not of your sex and/or religious beliefs, and who had engaged in the same or similar infractions and was not similarly disciplined and/or discharged.

Based upon the above, it is not likely that further investigation will result in a finding of a violation against the Respondent. Accordingly, enclosed please find the Commission's Dismissal and Notice of Rights. If you wish to pursue this matter further, you may file a lawsuit on your own behalf within 90 days of your receipt of the attached notice.

Sincerely,

2/25/03
Date

Marjorie A. Gregory
Investigator

Enclosure

cc: Neal A. Sanders, Esquire

3

# ATTACHMENT B

4



JEFFREY A. BEARD, Ph. D
SECRETARY
DEPARTMENT OF CORRECTIONS

WILLIAM J. LOVE
DEPUTY SECRETARY
FOR
SPECIALIZED FACILITIES &
PROGRAMS

COMMONWEALTH OF PENNSYLVANIA
STATE CORRECTIONAL INSTITUTION
AT CAMBRIDGE SPRINGS

451 Fullerton Avenue
Cambridge Springs, PA 16403-1229
Telephone 814-398-5400

May 10, 2002

MARILYN S. BROOKS
SUPERINTENDENT

Address All Replies
To Superintendent

PLAINTIFF'S EXHIBIT 18
*Purdy*
1-20-05

Brian Pierce
313 Main Street
Cambridge Springs, PA 16403

Dear Mr. Pierce:                                                Employe#456590

This is to advise you that effective May 13, 2002, you are terminated from your position as a Licensed Practical Nurse, Permanent Civil Service Status, with the Department of Corrections at the State Correctional Institution at Cambridge Springs.

A Pre-Disciplinary Conference was held on April 23, 2002, to offer you the opportunity to respond to charges of violation of the following sections of the Department of Corrections Code of Ethics:

> Section A, General Responsibility of Department of Corrections Employees: Consistent with the responsibility of all correctional employes in the Commonwealth of Pennsylvania to perform their duties with integrity and impartiality and to avoid situations whereby bias, prejudice, or personal gain could influence official decisions, the following code is being promulgated.
>
> Section B, #1: Specific Rules and Regulations – Department of Corrections: Each employe in the correctional system is expected to subscribe to the principle that something positive can be done for each inmate. This principle is to be applied without exception.
>
> This involves an intelligent, humane and impartial treatment of inmates. Profanity directed to inmates, or vengeful, brutal, or discriminatory treatment of inmates will not be tolerated. Corporal punishment shall not be utilized under any circumstances.
>
> Section B, #9: Lawful orders by a supervisor to a subordinate must be executed promptly and faithfully by the subordinate even though the employe may question the wisdom of such order. The privilege of formally appealing the order may be done at a later date through either the supervisory command structure, civil service appeal, or the grievance machinery.
>
> Section B, #10: Employes are expected to treat their peers, supervisors and the general public with respect and conduct themselves properly and professionally at all times; unacceptable conduct or insolence will not be tolerated.

PIERCE, BRIAN                                                                                    PAGE 2

Section B, #14: Employes will promptly report to their supervisor any information which comes to their attention and indicates violation of the law, rules, and/or regulations of the Department of Corrections by either an employe or an inmate, and will maintain reasonable familiarity with the provisions of such directives.

Section B, #29: All employes shall comply and cooperate with internal investigations conducted under the authority of the Department of Corrections, and respond to questions completely and truthfully. Procedure in cases that may result in criminal prosecution will include those rights accorded to all citizens of the Commonwealth.

The Pre-Disciplinary Committee substantiated violations of Sections A, General Responsibility, Section B, Number 1, Section B, Number 9, Section B, Number 10, Section B, Number 14, and Section B, Number 29.

It was established by the Pre-Disciplinary Committee, regarding incidents that occurred on March 9 and 10, 2002, that you directed and chose to alter the operation of the 4th medication line on March 10, 2002. You acknowledged, and statements from staff support, that you were upset by security questioning your integrity and character by checking on the short duration of the medication line and questioning you about the pre-pouring of medications on March 9, 2002. You admitted, during the fact-finding, that had the officer who had challenged you on March 9 not been on duty on March 10, the line would have run as usual. Your actions were clearly retaliatory and in violation of Section A, General Responsibility, and Section B, Number 10. You failed to show impartiality and integrity in the performance of your duties, and your actions were unprofessional and unacceptable conduct.

The Pre-Disciplinary Committee also found evidence to substantiate charges that you violated Section A, General Responsibility, and Section B, Number 1 and 9. On March 20, 2002, you refused to open the medication line window to inmates who arrived after medication line had closed, though you had been advised, by the team leader, that one of the inmates was on a life-sustaining anti-epileptic medication. You did not comply with the first two direct orders, and it was not until you were given a third direct order, that you opened the medication line window and provided the inmates their medications. It was further established that you had been informed that the inmates were late through no fault of their own. During the PDC, you stated that you were "pretty sure" that the anti-epileptic drug in question was not "life-sustaining". Although it was later established that the drug was not considered "life-sustaining" for the inmate in question, it was a critical medication, and you admitted that you were not sure at the time. It was not until a later date that you called the pharmacist to verify. You failed to perform your duties with integrity and impartiality, failed to provide humane and impartial treatment to inmates, and failed to follow lawful orders promptly.

Regarding an incident that occurred on April 1, 2002, the Pre-Disciplinary Committee found statements and evidence provided by a review of the narcotics sheets and blister cards, substantiated that you failed to accurately log the medication remaining in a blister pack of narcotics. This occurred not only when initially recording the narcotic sheet, but again when performing count at shift change. The Committee found that, by your carelessness, you failed to perform your duties with integrity as required by Section A, General Responsibility of Corrections Employees. You were previous issued a one-

6

PIERCE, BRIAN                                                                                          PAGE 3

day suspension on March 21, 2001 for medication count discrepancies, relating to an incident that occurred at SCI Albion prior to your transfer to SCI Cambridge Springs.

On April 1, 2002, you ordered a 60-day supply of HIV medications for an HIV inmate without required pre-release notification from the Records Department, in conflict with policy that mandates a 30-day supply of HIV medication be provided. You were overheard advising the inmate that you would "hook her up" and observed passing a note to her. During the PDC, you admitted to making this statement to the inmate, and ordering the 60-day supply, stating that you should have known that only a 30-day supply was allowed by policy. Your response that this was an error, and acknowledgment during the PDC that you had acted on the inmate's word that she was leaving for a center rather than checking for written notice of her release per procedures, does not excuse your actions. The Committee found the evidence substantiates violation of Section A, General Responsibility. Documentation indicates that you were advised in the inmate's presence that medications were not to be ordered until notification by Inmate Records of the release, yet you proceeded to order the 60-day supply. Your actions showed clear disregard for established policy and demonstrate that you allowed your personal feelings and opinions to compromise your integrity and impartiality.

On April 5, 2002, you violated established policy/procedure, when you went to the RHU without the medication bag and the Medication Administration Record (MAR). Proper procedure was discussed with you on August 28, 2001 and again on March 11, 2002, and you acknowledged your understanding to the Corrections Health Care Administrator. In addition, you were found to have pre-poured medications, borrowed medications from other inmates' blister cards, and you failed to crush psychiatric medications, as required by DOC Policy 13.4.1. Your actions were in violation of Section B, Number 10 and Number 14. You failed to act in accordance with policy with which you were required to maintain familiarity, regarding medication room policy/procedure, and failed to conduct yourself properly and professionally. Evidence presented in the form of staff statements verifies that you were aware of the violations, yet chose to disregard policy and procedure.

You also violated Section B, Number 10, by failing to conduct yourself properly and professionally during an incident that occurred on April 9, 2002. You engaged in a conversation with inmates, during which you made negative comments about the Residential Substance Abuse Treatment (RSAT) program. You commented that "it was set up for them to fail, and so they would return", and stated that the DOC programs "were a joke". Your actions, particularly in front of inmates, were unacceptable.

During the fact-finding regarding violations of medication policy and procedure, you alleged that other nurses were violating policy and procedure regarding pre-pouring medications, stock medications, and borrowing medications, but refused to provide names, stating "I don't play that game". During the PDC, you again referred to other staff and were given a direct order to provide names, and only then agreed to comply. Your failure to cooperate during the fact-finding was in violation of Section B, Number 29.

You were suspended on March 21, 2001 for an incident that occurred at SCI Albion prior to your transfer to SCI Cambridge Springs for violations of Code of Ethics sections B-8, B-14, and B-22 regarding medication count. You were issued a verbal reprimand on 7

PIERCE, BRIAN								PAGE 4

September 28, 2001, for unprofessional conduct, and issued a written reprimand on November 20, 2001, for failure to treat peers and supervisors with respect, and unprofessional conduct.

Please return any state property including, but not limited to the following items: identification cards, keys, tools, equipment, books, reports, or uniforms to your supervisor before close of business on May 13, 2002.

Your Group Life Insurance Policy ends on your last day of work. Contact Prudential Life Insurance Customer Service at 1-800-893-7316 regarding continuation of life insurance on a self-paid basis.

The PA Employee Benefits Trust Fund will contact you directly concerning continuation of policies on a direct pay basis. You are to return your Prescription Drug Card to the Supplemental Benefits Division of the PEBTF, 150 South 43rd Street, Suite 3, Harrisburg, PA 17111-5700. After May 13, 2002, you are no longer permitted to use this or any other employee benefit. It will be necessary to contact the Regional State Employees' Retirement System at PO Box 01561, Seneca, Pennsylvania, 16346 regarding your retirement account. You will be paid by supplemental check for any accrued, unused leave balances.

Your appeal rights in this matter under the Civil Service Act are explained in the instructions and information section on the attached Civil Service Appeal Form, (SCSC-4112).

Your rights in this Personnel Action are explained in the Grievance and Arbitration Section of the AFSCME Master Agreement.

A copy of this letter has been placed in your Official Personnel File.

Sincerely,

Marilyn S. Brooks
Superintendent
For
Jeffrey A. Beard, Ph.D.
Secretary
Department of Corrections

MSB/NW

cc:   Deputy Good, Deputy Wilkes, N. Wirth, HR Officer, BHR/Labor Relations, SCSC, AFSCME, Z. Rayner

8