IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRIAN D. PIERCE, )
    Plaintiff, )
)
vs. ) C.A. No. 03-173Erie
) District Judge McLaughlin
PA DEPT OF CORRECTIONS, ) Magistrate Judge Baxter
    Defendant. )

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

It is respectfully recommended that Defendant's motion for summary judgment [Document # 23] be denied.

**II.   REPORT**

    **A.   Introduction**

Plaintiff, Brian D. Pierce, brought this employment discrimination action on May 27, 2003. Plaintiff alleges that he is a male nurse employed by the Pennsylvania Department of Corrections and has been the victim of gender discrimination and retaliation.[1] Plaintiff's employment was terminated on May 10, 2002 and he filed a charge of discrimination with the EEOC on October 28, 2002. As relief, Plaintiff seeks an award of back pay, front pay,

---

[1] The parties disagree over whether Plaintiff has pled a hostile work environment claim. Defendant makes much of the fact that the undersigned in a previous Report and Recommendation characterized the case as one of "gender discrimination and retaliation" without reference to any hostile work environment claim. Defendant's reliance on an introductory sentence in a Report and Recommendation on a motion for more definite statement/to dismiss is at its own peril. Under the notice pleading standard of the Federal Rules of Civil Procedure and the allegations at ¶ 15 and ¶ 20 of the complaint, as well as Federal Rule of Civil Procedure 15(b) allowing amendments to conform to the evidence, Defendant would be foolish to overlook a hostile work environment claim.

1

compensation for lost fringe benefits, compensatory damages for humiliation, embarrassment and loss of self-esteem, attorney's fees and punitive damages.

Defendant has moved for summary judgment [Document # 23], Plaintiff has filed a brief in opposition [Documents # 27 and 28], and Defendant has filed a reply to the opposition [Document # 29].

### B.     Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986);

Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).  The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim.  Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

   A material fact is a fact whose resolution will affect the outcome of the case under applicable law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson, 477 U.S. at 247-249.

   **C.   Non-Exhaustion of all claims**

   Defendant claims that Plaintiff has failed to exhaust his administrative remedies as to his claims.

   A party seeking relief under Title VII or the Americans with Disabilities Act, must file an administrative charge with the Equal Employment Opportunity Commission and/or the appropriate state agency before that party may seek relief in federal court.  Antol v. Perry, 82 F.3d 1291, 1295 n.3 (3d Cir.1996) ("exhaustion is a prerequisite to bringing suit" under Title VII); Deily v. Waste Management of Allentown, 118 F.Supp.2d 539, 541 (E.D. Pa. 2000) (plaintiff must exhaust ADA claims).  Exhaustion of the administrative process is a "precondition for filing suit under Title VII, the ADEA, the ADA and the PHRA."  Nerosa v. Storecast Merchandising Corp., 2002 WL 1998181, at * 3 (E.D.Pa. Aug 28, 2002).  "Because the aim of the statutory scheme is to resolve disputes by informal conciliation, prior to litigation,

3

suits in the district court are limited to matters of which the EEOC has had notice and a chance, if appropriate, to settle." Anjelino v. The New York Times Company, 200 F.3d 73, 93 (3d Cir. 2000) quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976).

The Supreme Court has held that exhaustion of administrative remedies in the employment context is not a jurisdictional requirement and is subject to doctrines of waiver, estoppel and equitable waiver. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1992). See also Gooding v. Warner-Lambert Company, 744 F.2d 354, 358 (3d Cir. 1984).

Although Defendant argues that part of the complaint should be dismissed due to failure to exhaust administratively, Defendant does not specify what aspects of the complaint exceed the scope of the claim brought before the EEOC. A review of the complaint and the February 25, 2003, letter from the EEOC to Plaintiff [Document # 30, Attachment A] demonstrates that the claims of gender discrimination and retaliation were investigated by the EEOC. Accordingly, Defendant's motion for summary judgment should be denied as to the non-exhaustion of Plaintiff's claims.

### D. Reverse Gender Discrimination

Gender discrimination against males is commonly referred to as reverse discrimination. In cases involving reverse discrimination, the Third Circuit has articulated a modified burden shifting analysis that differs from the usual test for gender discrimination enunciated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[2] See Iadimarco v. Runyon, 190 F.3d 151 (3d Cir. 1999). Under Iadimarco, the plaintiff must establish a *prima*

---

[2] In order to establish a *prima facie* case for a Title VII employment discrimination claim where there is no direct evidence of discrimination, the plaintiff must show that (1) he is a member of a protected class; (2) he was qualified for the job and satisfied his employer's expectations; (3) he was dismissed despite his satisfactory performance; and (4) after his dismissal, the job remained open and the employer sought applicants for it. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The burden then shifts to the defendant to show that it took the adverse employment action against the plaintiff for a legitimate, nondiscriminatory reason. Id. Finally, the plaintiff has an opportunity to demonstrate that the legitimate and non-discriminatory reasons offered by the defendant are only a pretext for discrimination. Id.

*facie* case by presenting sufficient evidence to allow a fact finder to conclude that the defendant treated some people less favorably than others based on sex[3]. Next, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment action. See Corbett v. Sealy, 135 Fed. Appx. 506, 509 (3d Cir. 2005) (explaining Iadimarco standard); Medcalf v. Trustees of University of Pennsylvania, 71 Fed. Appx. 924, 927 (3d Cir. 2003) (same). Finally, the burden shifts back to plaintiff to show the defendants reason for the action was pretextual. Id.

After citing the wrong standard for analysis of a reverse gender discrimination case[4], Defendant's entire argument in support of summary judgment as to the *prima facie* case reads as follows:

> In the instant case, it is questionable whether plaintiff demonstrates a *prima facie* case of gender discrimination. Plaintiff makes "bald statements" and "bare-bone allegations" in order to attempt to demonstrate a *prima facie* case. This is not enough.

Document # 24, page 10.

In his Opposition Brief, Plaintiff argues that he may meet the first element of the *prima facie* case by "showing background circumstances supporting the suspicion that the defendant is the unusual employer who discriminates against the majority." Document # 28, page 13. However, Plaintiff, like Defendant, misunderstands and misapplies the relevant and appropriate burden shifting analysis applicable to cases of reverse gender discrimination. This "background circumstances" approach to establishing a *prima facie* case of reverse discrimination was

---

[3] "[A] plaintiff who brings a 'reverse discrimination' suit under Title VII should be able to establish a *prima facie* case in the absence of direct evidence of discrimination by presenting sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff 'less favorably than others because of his race, color, religion, sex, or national origin.'" Iadimarco, 190 F.3d at 163 quoting Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978).

[4] In its motion for summary judgment, Defendant cites and applies the McDonnell Douglas test which governs a typical gender discrimination case, the first prong of which is to establish that the plaintiff is a member of a protected class. See infra, footnote 2. Clearly, the typical McDonnell Douglas analysis does not translate into a reverse gender discrimination case as a male will not be able to demonstrate that he is a member of a protected class.

5

expressly rejected by the Third Circuit several years ago.  See Iadimarco, 190 F.3d at 160 ("We now reject the 'background circumstances' analysis set forth in Parker, Harding, and their progeny.").

Because Defendant has not appropriately supported his motion for summary judgment on the *prima facie* case and because Plaintiff has not presented evidence to support a conclusion that Defendant treated some more favorably due to their gender, this Court can make no conclusion as to the *prima facie* case of reverse gender discrimination.  Based on the record presently before this Court and the inappropriate arguments advanced by the parties at this late stage of the proceedings, this Court finds that summary judgment is inappropriate and should be denied.

### E.    Retaliation

Defendant moves for summary judgment on the basis that Plaintiff has failed to state a claim of retaliation.

To analyze a claim of retaliation, this Court must follow a modified version of the McDonnell Douglas burden shifting framework.  Under Title VII, it is unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a) (commonly called the "retaliation provision of Title VII").  In order to state a claim of retaliatory discrimination, a plaintiff must show three elements: "(1) the employee engaged in a protected activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 286 (3d Cir. 2001).  See also Springer v. Henry, ___ F.3d ___, 2006 WL 121942 (3d Cir. January 18, 2006) (laying out standard for retaliation analysis for a public employee engaging in protected First Amendment speech).

In the event that a plaintiff satisfies the *prima facie* case of retaliation, the burden of production, not the burden of persuasion, shifts to the employer to "articulate some legitimate,

non-discriminatory reason" for its adverse employment action. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) quoting McDonnell Douglas, 411 U.S. at 802. Then, a plaintiff must prove by a preponderance of the evidence that the proffered reason was merely a pretext and that in actuality, a retaliatory animus played a determinative or at least a motivating role in the employer's decision making process. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000); Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183 (3d Cir. 2003). To do this, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence." Austin v. Norfolk Southern Corp., ___ F.3d ___, ___, 2005 WL 3420178, at *6 (3d Cir. Dec.14, 2005) quoting Fuentes, 32 F.3d at 764.

### 1.     The *prima facie* case

Defendant asserts that Plaintiff has failed to establish a *prima facie* case of retaliation in that he has not established the causal link between the adverse action by the employer and the engagement by him in a protected activity because Plaintiff fails to demonstrate that his employer knew about any protected activity.[5]  Document # 24, pages 12-13. Plaintiff argues to the contrary.

A suggestive temporal proximity between the protected activity and an alleged retaliatory act can be adequate to meet the causal link requirement. Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997) quoting Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) ("temporal proximity between the protected activity and the termination is sufficient to establish

---

[5] Importantly, Defendant does not argue that Plaintiff fails to meet either the protected activity or the adverse action prongs of a *prima facie* case of retaliation. See Document # 24, page 13. Because Defendant has not addressed these prongs in his motion for summary judgment, this Court will not *sua sponte* raise them and for purposes of the analysis on this motion this Court presupposes that Plaintiff has sufficiently met these other prongs.

a causal link."). However, the "mere passage of time is not legally conclusive proof against retaliation." Woodson, 109 F.3d at 920 quoting Robinson v. SEPTA, 982 F.2d 892, 894 (3d Cir. 1993) ("The [trial] court could reasonably find that the initial series of events [from two years prior] thus caused [Plaintiff's] and [Defendant's] relationship to deteriorate, and set a pattern of behavior that [Defendant] followed in retaliating against [Plaintiff's] later efforts at opposing the Title VII violations he perceived."). "If timing alone could ever be sufficient to establish a causal link, ... the time of the retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1302 (3d Cir. 1997).[6]

In his Opposition Brief, Plaintiff claims that he was not the subject of any discipline from 1995 through September of 2000. See also Document # 28-4, Plaintiff's deposition, page 16. In September of 2000, Plaintiff gave testimony adverse to the Department of Corrections in the administrative proceedings (involving gender discrimination) of Michael White[7], a colleague and male nurse. It is not clear from the record before this Court whether prison staff at either SCI-Albion or SCI-Cambridge Springs knew of Plaintiff's involvement in the EEOC investigation.

In March of 2001, after being identified as a favorable witness for the prosecution in White's federal lawsuit, Plaintiff was accused of committing an infraction involving a miscount of the narcotic drug Vicodin which had occurred in September of 2000 (six months prior). Document # 28-4, Plaintiff's deposition, page 10-11. Within four days of being listed as a witness in the federal lawsuit, Plaintiff was suspended for the September 2000 infraction.

---

[6] On the other hand, "when temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus." Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997).

[7] Plaintiff later provided testimony in September of 2002 in the federal lawsuit that followed the administrative proceedings. See White v. Department of Corrections, Civil Action Number 00-377Erie.

As a further incident of retaliation[8], Plaintiff argues that on October 26, 2001, he filed an internal complaint alleging discrimination and retaliation. In November 2001, Superintendent Brooks dismissed the claim without investigation based on her finding that Plaintiff was not a member of a protected class. Document # 28-2, page 15. Within four months of the dismissal of that internal complaint, Plaintiff claims that he began to be disciplined for acts that were routinely performed by other female employees.

This Court finds that Plaintiff has sufficiently alleged a causal link to meet a *prima facie* case of retaliation. The timing of Plaintiff's difficulties are certainly suggestive. Especially suggestive is the timing of the March 2001 disciplinary action taken against Plaintiff for an alleged September 2000 infraction - six months following the infraction but only four days after he was identified as a witness in a federal lawsuit against the Department of Corrections.[9]

### 2.     Defendant's Legitimate Reason

For purposes of this motion, this Court presupposes that Plaintiff has met his burden of establishing a *prima facie* case of retaliation[10], the burden of production now shifts to Defendant to "articulate some legitimate, non-discriminatory reason" for its adverse employment action. Fuentes, 32 F.3d at 763. Defendant's burden is "relatively light" in this regard. Id.

Defendant argues that Plaintiff's termination letter articulates its legitimate reasons for terminating Plaintiff's employment. The May 10, 2002 letter signed by Superintendent Brooks lists numerous reasons for Plaintiff's termination, including:

---

[8] "A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario." Andrews v. City of Philadelphia, 895 F.2d 1469, 1484 (3d Cir. 1990).

[9] Defendant has not made any attempt to explain the six-month lag in this disciplinary action.

[10] Defendant did not argue that Plaintiff failed to meet the protected activity or adverse action prongs of the *prima facie* case. See infra, footnote 5.

9

- that on March 9 and 10, 2002, Plaintiff altered the operation of a medication line after a security guard questioned him the previous day - the Disciplinary Committee concluded that Plaintiff acted unprofessionally in this regard.

- that on March 20, 2002, Plaintiff refused to provide inmates with medication after the medication line had closed despite being advised by the team leader that one of the inmates was on a "life-sustaining anti-epileptic" medication. After three direct orders from a supervisor, Plaintiff gave the needed medication. The Disciplinary Committee concluded that Plaintiff failed to perform his duties with integrity and impartiality, failed to provide humane and impartial treatment to inmates and failed to follow lawful orders promptly.

- that on April 1, 2002, Plaintiff failed to accurately log certain narcotic medications. The Disciplinary Committee concluded that due to carelessness, Plaintiff had failed to perform his duties with integrity despite having previously been disciplined for medication count discrepancies.

- that on April 1, 2002, Plaintiff ordered a sixty day supply of HIV medications without the required pre-release notification in conflict with established policy. The Disciplinary Committee concluded that such actions showed disregard for established policy and compromised Plaintiff's integrity and impartiality.

- that on April 5, 2002, Plaintiff violated policy by going into the Restricted Housing Unit without the medication bag and Medication Administration Record. Plaintiff had previously been counseled on proper procedure on August 28, 2001 and March 11, 2002. Additionally, Plaintiff was found to have pre-poured medications, borrowed medications for other inmates' blister cards, and failed to crush psychiatric medications in violation of policy.

- that on April 9, 2002, Plaintiff engaged in a conversation with inmates during which he made negative statements about the Residential Substance Abuse Treatment program.

- that during the Disciplinary Committee's investigation, Plaintiff argued that others were not disciplined for engaging in similar conduct, but Plaintiff refused a direct order to name names. Plaintiff failed to cooperate with an investigation in this regard.

Document # 30-2, Termination Letter dated May 10, 2002.

The Department of Corrections has met its "relatively light burden" to show a legitimate, non-discriminatory reason for Plaintiff's termination.

### 3.     Pre-text

The burden now shifts back to Plaintiff to show by a preponderance of the evidence that the offered reasons are actually a pretext and that a retaliatory animus played a motivating factor in the employer's decision. Schellenberger, 318 F.3d 183; Fuentes, 32 F.3d at 764. The Third

Circuit has instructed that in order to show pretext, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence." Austin, ___ F.3d at ___, 2005 WL 3420178, at *6 quoting Fuentes, 32 F.3d at 764.

Plaintiff argues that the reasons for his termination were pretextual in that he was disciplined for acts routinely performed by female coworkers who had not engaged in protected activities. Shortly before his termination, Plaintiff filed internal complaints concerning the acts of numerous coworkers including borrowing medications from other inmates, pre-pouring medications, giving medications out of stock without recording it. Document # 28-8, pages 16-19. All of these complaints involved activities which formed the basis for Plaintiff's termination, yet Plaintiff contends that none of these coworkers were disciplined for their actions [Document # 28-4, Plaintiff's Deposition, pages 5-8]. At the very least, this is an inconsistency in Defendant's proffered legitimate reason for termination.[11]

Therefore, on Defendant's motion for summary judgment, as Defendant has not proved to this Court that there is an absence of evidence supporting Plaintiff's claims, summary judgment should be denied.

### F. Pennsylvania Human Relations Act

Defendant argues that Plaintiff cannot state a claim under the PHRA. Because Plaintiff makes clear in his Opposition Brief that he does not raise a claim under the PHRA, this Court need not address Defendant's argument in this regard.

---

[11] Defendant has done nothing to refute Plaintiff's argument of pretext. See Document #24, page 13.

**III.    CONCLUSION**

For the foregoing reasons, this Court respectfully recommends that Defendant's motion for summary judgment [Document # 23] be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.


                                                                S/ Susan Paradise Baxter
                                                                SUSAN PARADISE BAXTER
                                                                Chief United States Magistrate Judge


Dated:  February 24, 2006